(Slip Opinion) OCTOBER TERM, 2010 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CSX TRANSPORTATION, INC. *v.* MCBRIDE

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 10–235.  Argued March 28, 2011—Decided June 23, 2011

Respondent McBride, a locomotive engineer with petitioner CSX Transportation, Inc., an interstate railroad, sustained a debilitating hand injury while switching railroad cars.  He filed suit under the Federal Employers' Liability Act (FELA), which holds railroads liable for employees' injuries "resulting in whole or in part from [carrier] negligence."  45 U. S. C. §51.  McBride alleged that CSX negligently (1) required him to use unsafe switching equipment and (2) failed to train him to operate that equipment.  A verdict for McBride would be in order, the District Court instructed, if the jury found that CSX's negligence "caused or contributed to" his injury.  The court declined CSX's request for additional charges requiring McBride to "show that . . . [CSX's] negligence was a proximate cause of the injury" and defining "proximate cause" as "any cause which, in natural or probable sequence, produced the injury complained of."  Instead, relying on *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, the court gave the Seventh Circuit's pattern FELA instruction: "Defendant 'caused or contributed to' Plaintiff's injury if Defendant's negligence played a part—no matter how small—in bringing about the injury."  The jury returned a verdict for McBride.

On appeal, CSX renewed its objection to the failure to instruct on proximate cause, now defining the phrase to require a "direct relation between the injury asserted and the injurious conduct alleged."  The appeals court, however, approved the District Court's instruction and affirmed its judgment for McBride.  Because *Rogers* had relaxed the proximate cause requirement in FELA cases, the court said, an instruction that simply paraphrased *Rogers'* language could not be declared erroneous.

*Held:* The judgment is affirmed.

598 F. 3d 388, affirmed.

JUSTICE GINSBURG delivered the opinion of the Court with respect to all but Part III–A, concluding, in accord with FELA's text and purpose, *Rogers,* and the uniform view of the federal appellate courts, that FELA does not incorporate stock "proximate cause" standards developed in nonstatutory common-law tort actions. The charge proper in FELA cases simply tracks the language Congress employed, informing juries that a defendant railroad "caused or contributed to" a railroad worker's injury "if [the railroad's] negligence played a part—no matter how small—in bringing about the injury." That, indeed, is the test Congress prescribed for proximate causation in FELA cases. Pp. 4–14, 16–19.

(a) CSX's interpretation of *Rogers* is not persuasive. Pp. 4–12.

(1) Given FELA's "broad" causation language, *Urie* v. *Thompson*, 337 U. S. 163, 181, and Congress' "humanitarian" and "remedial goal[s]" in enacting the statute, FELA's causation standard is "relaxed" compared to that applicable in common-law tort litigation, *Consolidated Rail Corporation* v. *Gottshall*, 512 U. S. 532, 542–543. *Rogers* described that relaxed standard as "whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." 352 U. S., at 506. Because the District Court's instruction tracked *Rogers*' language, the instruction was plainly proper so long as *Rogers* actually prescribes the causation definition applicable under FELA. See *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 172. CSX, however, contends that *Rogers* was a narrowly focused decision that did not displace common-law formulations of "proximate cause." Drawing largely on Justice Souter's concurrence in *Norfolk Southern R. Co.* v. *Sorrell*, 549 U. S. 158, 173, CSX urges that *Rogers'* "any part . . . in producing the injury" test displaced only common-law restrictions on recovery for injuries involving contributory negligence or other multiple causes, but did not address the requisite directness of a cause. Pp. 4–6.

(2) In *Rogers,* the employee was burning vegetation that lined his employer's railroad tracks. A passing train fanned the flames, which spread to the top of the culvert where he was standing. Attempting to escape, he slipped and fell on the sloping gravel covering the culvert, sustaining serious injuries. 352 U. S., at 501–503. The state-court jury returned a verdict for him, but the Missouri Supreme Court reversed. Even if the railroad had been negligent in failing to maintain a flat surface, the court reasoned, the employee was at fault because of his lack of attention to the spreading fire. As the fire "was something extraordinary, unrelated to, and disconnected from the incline of the gravel," the court found that "plaintiff's injury was not the

natural and probable consequence of any negligence of defendant." *Ibid.* This Court reversed. FELA, this Court affirmed, did not incorporate any traditional common-law formulation of "proximate causation[,] which [requires] the jury [to] find that the defendant's negligence was the sole, efficient, producing cause of injury." *Id.*, at 506. Whether the railroad's negligent act was the "immediate reason" for the fall, the Court added, was "irrelevant." *Id.*, at 503. The Court then announced its "any part . . . in producing the injury" test, *id.*, at 506.

*Rogers* is most sensibly read as a comprehensive statement of FELA's causation standard. The State Supreme Court there acknowledged that a FELA injury might have multiple causes, but considered the respondent railroad's part too indirect to establish the requisite causation. That is the very reasoning this Court rejected in *Rogers*. It is also the reasoning CSX asks this Court to resurrect. The interpretation adopted today is informed by the statutory history, see *Trainmen* v. *Virginia ex rel. Virginia State Bar*, 377 U. S. 1, 3, the precedents on which *Rogers* drew, see, *e.g., Coray* v. *Southern Pacific Co.*, 335 U. S. 520, 523–524, this Court's subsequent decisions, see, *e.g., Ferguson* v. *Moore-McCormack Lines, Inc.*, 352 U. S. 521, 523–524, the decisions of every Court of Appeals that reviews FELA cases, and the overwhelming majority of state courts and scholars. This understanding of *Rogers* "has been accepted as settled law for several decades." *IBP, Inc.* v. *Alvarez*, 546 U. S. 21, 32. To discard or restrict the instruction now would ill serve *stare decisis*. Pp. 6–12.

(b) CSX nonetheless worries that the *Rogers* "any part" instruction opens the door to unlimited liability, inviting juries to impose liability on the basis of "but for" causation. A half century's experience with *Rogers* gives little cause for concern: CSX has not identified even *one* trial in which the instruction generated an absurd or untoward award.

FELA's "in whole or in part" language is straightforward. "[R]easonable foreseeability of harm is an essential ingredient of [FELA] *negligence*," *Gallick* v. *Baltimore & Ohio R. Co.*, 372 U. S. 108, 117 (emphasis added). If negligence is proved, however, and is shown to have "played any part, even the slightest, in producing the injury," *Rogers*, 352 U. S., at 506, then the carrier is answerable in damages even if " 'the extent of the [injury] or the manner in which it occurred' " was not "[p]robable" or "foreseeable." *Gallick*, 372 U. S., at 120–121, and n. 8. Properly instructed on negligence and causation, and told, as is standard practice in FELA cases, to use their "common sense" in reviewing the evidence, juries would have no warrant to award damages in far out "but for" scenarios, and judges

Syllabus

would have no warrant to submit such cases to the jury.  Pp. 12–14, 16–19.

GINSBURG, J., delivered the opinion of the Court, except as to Part III–A.  BREYER, SOTOMAYOR, and KAGAN, JJ., joined that opinion in full, and THOMAS, J., joined as to all but Part III–A.  ROBERTS, C. J., filed a dissenting opinion, in which SCALIA, KENNEDY, and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 10–235

## CSX TRANSPORTATION, INC., PETITIONER *v.* ROBERT MCBRIDE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[June 23, 2011]

JUSTICE GINSBURG delivered the opinion of the Court, except as to Part III–A.*

This case concerns the standard of causation applicable in cases arising under the Federal Employers' Liability Act (FELA), 45 U. S. C. §51 *et seq.* FELA renders railroads liable for employees' injuries or deaths "resulting in whole or in part from [carrier] negligence." §51. In accord with the text and purpose of the Act, this Court's decision in *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500 (1957), and the uniform view of federal appellate courts, we conclude that the Act does not incorporate "proximate cause" standards developed in nonstatutory common-law tort actions. The charge proper in FELA cases, we hold, simply tracks the language Congress employed, informing juries that a defendant railroad caused or contributed to a plaintiff employee's injury if the railroad's negligence played any part in bringing about the injury.

I

Respondent Robert McBride worked as a locomotive

---

*JUSTICE THOMAS joins all but Part III–A of this opinion.

engineer for petitioner CSX Transportation, Inc., which operates an interstate system of railroads. On April 12, 2004, CSX assigned McBride to assist on a local run between Evansville, Indiana, and Mount Vernon, Illinois. The run involved frequent starts and stops to add and remove individual rail cars, a process known as "switching." The train McBride was to operate had an unusual engine configuration: two "wide-body" engines followed by three smaller conventional cabs. McBride protested that the configuration was unsafe, because switching with heavy, wide-body engines required constant use of a hand-operated independent brake. But he was told to take the train as is. About ten hours into the run, McBride injured his hand while using the independent brake. Despite two surgeries and extensive physical therapy, he never regained full use of the hand.

Seeking compensation for his injury, McBride commenced a FELA action against CSX in the U. S. District Court for the Southern District of Illinois. He alleged that CSX was twice negligent: First, the railroad required him to use equipment unsafe for switching; second, CSX failed to train him to operate that equipment. App. 24a–26a. A verdict for McBride would be in order, the District Court instructed, if the jury found that CSX "was negligent" and that the "negligence caused or contributed to" McBride's injury. *Id.*, at 23a.

CSX sought additional charges that the court declined to give. One of the rejected instructions would have required "the plaintiff [to] show that . . . the defendant's negligence was a proximate cause of the injury." *Id.*, at 34a. Another would have defined "proximate cause" to mean "any cause which, in natural or probable sequence, produced the injury complained of," with the qualification that a proximate cause "need not be the only cause, nor the last or nearest cause." *Id.*, at 32a.

Instead, the District Court employed, as McBride re-

quested, the Seventh Circuit's pattern instruction for FELA cases, which reads:

> "Defendant 'caused or contributed to' Plaintiff's injury if Defendant's negligence played a part—no matter how small—in bringing about the injury. The mere fact that an injury occurred does not necessarily mean that the injury was caused by negligence." *Id.*, at 31a.

For this instruction, the Seventh Circuit relied upon this Court's decision in *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500 (1957). The jury returned a verdict for McBride, setting total damages at $275,000, but reducing that amount by one-third, the percentage the jury attributed to plaintiff's negligence. App. 29a.

CSX appealed to the Seventh Circuit, renewing its objection to the failure to instruct on "proximate cause." Before the appellate court, CSX "maintain[ed] that the correct definition of proximate causation is a 'direct relation between the injury asserted and the injurious conduct alleged.'" 598 F. 3d 388, 393, n. 3 (2010) (quoting *Holmes* v. *Securities Investor Protection Corporation*, 503 U. S. 258, 268 (1992)). A properly instructed jury, CSX contended, might have found that the chain of causation was too indirect, or that the engine configuration was unsafe because of its propensity to cause crashes during switching, not because of any risk to an engineer's hands. Brief for Defendant-Appellant in No. 08–3557 (CA7), pp. 49–52.

The Court of Appeals approved the District Court's instruction and affirmed the judgment entered on the jury's verdict. *Rogers* had "relaxed the proximate cause requirement" in FELA cases, the Seventh Circuit concluded, a view of *Rogers* "echoed by every other court of appeals." 598 F. 3d, at 399. While acknowledging that a handful of state courts "still appl[ied] traditional formulations of proximate cause in FELA cases," *id.*, at 404, n. 7, the Seventh Circuit said it could hardly declare erroneous

an instruction that "simply paraphrase[d] the Supreme Court's own words in *Rogers*," *id.*, at 406.

We granted certiorari to decide whether the causation instruction endorsed by the Seventh Circuit is proper in FELA cases. 562 U. S. ___ (2010). That instruction does not include the term "proximate cause," but does tell the jury defendant's negligence must "pla[y] a part—no matter how small—in bringing about the [plaintiff's] injury." App. 31a.

## II

## A

The railroad business was exceptionally hazardous at the dawn of the twentieth century. As we have recounted, "the physical dangers of railroading . . . resulted in the death or maiming of thousands of workers every year," *Consolidated Rail Corporation* v. *Gottshall*, 512 U. S. 532, 542 (1994), including 281,645 casualties in the year 1908 alone, S. Rep. No. 61–432, p. 2 (1910). Enacted that same year in an effort to "shif[t] part of the human overhead of doing business from employees to their employers," *Gottshall*, 512 U. S., at 542 (internal quotation marks omitted), FELA prescribes:

> "Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death *resulting in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier . . . ." 45 U. S. C. §51 (emphasis added).

Liability under FELA is limited in these key respects: Railroads are liable only to their employees, and only for injuries sustained in the course of employment. FELA's language on causation, however, "is as broad as could be framed." *Urie* v. *Thompson*, 337 U. S. 163, 181 (1949). Given the breadth of the phrase "resulting in whole or in

part from the [railroad's] negligence," and Congress' "humanitarian" and "remedial goal[s]," we have recognized that, in comparison to tort litigation at common law, "a relaxed standard of causation applies under FELA." *Gottshall*, 512 U. S., at 542–543. In our 1957 decision in *Rogers*, we described that relaxed standard as follows:

> "Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." 352 U. S., at 506.

As the Seventh Circuit emphasized, the instruction the District Court gave in this case, permitting a verdict for McBride if "[railroad] negligence played a part—no matter how small—in bringing about the injury," tracked the language of *Rogers*. If *Rogers* prescribes the definition of causation applicable under FELA, that instruction was plainly proper. See *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 172 (1989) ("Considerations of *stare decisis* have special force in the area of statutory interpretation . . . ."). While CSX does not ask us to disturb *Rogers*, the railroad contends that lower courts have overread that opinion. In CSX's view, shared by the dissent, *post*, at 9–10, Rogers was a narrowly focused decision that did not touch, concern, much less displace common-law formulations of "proximate cause."

Understanding this argument requires some background. The *term* "proximate cause" is shorthand for a concept: Injuries have countless causes, and not all should give rise to legal liability. See W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts §42, p. 273 (5th ed. 1984) (hereinafter Prosser and Keeton). "What we . . . mean by the word 'proximate,'" one noted jurist has explained, is simply this: "[B]ecause of convenience, of public policy, of a rough sense of justice,

the law arbitrarily declines to trace a series of events beyond a certain point." *Palsgraf* v. *Long Island R. Co.*, 248 N. Y. 339, 352, 162 N. E. 99, 103 (1928) (Andrews, J., dissenting). Common-law "proximate cause" formulations varied, and were often both constricted and difficult to comprehend. See T. Cooley, Law of Torts 73–77, 812–813 (2d ed. 1888) (describing, for example, prescriptions precluding recovery in the event of any "intervening" cause or any contributory negligence). Some courts cut off liability if a "proximate cause" was not the *sole* proximate cause. Prosser and Keeton §65, p. 452 (noting "tendency . . . to look for some single, principal, dominant, 'proximate' cause of every injury"). Many used definitions resembling those CSX proposed to the District Court or urged in the Court of Appeals. See *supra*, at 2–3 (CSX proposed key words "natural or probable" or "direct" to describe required relationship between injury and alleged negligent conduct); Prosser and Keeton §43, pp. 282–283.

Drawing largely on Justice Souter's concurring opinion in *Norfolk Southern R. Co.* v. *Sorrell*, 549 U. S. 158, 173 (2007), CSX contends that the *Rogers* "any part" test displaced only common-law restrictions on recovery for injuries involving contributory negligence or other "multiple causes." Brief for Petitioner 35 (internal quotation marks omitted).[1] *Rogers* "did not address the requisite directness of a cause," CSX argues, hence that question continues to be governed by restrictive common-law formulations. *Ibid.*

B

To evaluate CSX's argument, we turn first to the facts of *Rogers*. The employee in that case was injured while burning off weeds and vegetation that lined the defen-

--------------

[1] In *Sorrell*, the Court held that the causation standard was the same for railroad negligence and employee contributory negligence, but said nothing about what that standard should be. 549 U. S., at 164–165.

dant's railroad tracks. A passing train had fanned the flames, which spread from the vegetation to the top of a culvert where the employee was standing. Attempting to escape, the employee slipped and fell on the sloping gravel covering the culvert, sustaining serious injuries. 352 U. S., at 501–503. A Missouri state-court jury returned a verdict for the employee, but the Missouri Supreme Court reversed. Even if the railroad had been negligent in failing to maintain a flat surface, the court reasoned, the employee was at fault because of his lack of attention to the spreading fire. *Rogers* v. *Thompson*, 284 S. W. 2d 467, 472 (Mo. 1955). As the fire "was something extraordinary, unrelated to, and disconnected from the incline of the gravel," the court felt "obliged to say [that] plaintiff's injury was not the natural and probable consequence of any negligence of defendant." *Ibid.*

We held that the jury's verdict should not have been upset. Describing two potential readings of the Missouri Supreme Court's opinion, we condemned both. First, the court erred in concluding that the employee's negligence was the "sole" cause of the injury, for the jury reasonably found that railroad negligence played a part. *Rogers*, 352 U. S., at 504–505. Second, the court erred insofar as it held that the railroad's negligence was not a sufficient cause unless it was the more "probable" cause of the injury. *Id.*, at 505. FELA, we affirmed, did not incorporate any traditional common-law formulation of "proximate causation[,] which [requires] the jury [to] find that the defendant's negligence was the sole, efficient, producing cause of injury." *Id.*, at 506. Whether the railroad's negligent act was the "immediate reason" for the fall, we added, was "an irrelevant consideration." *Id.*, at 503. We then announced the "any part" test, *id.*, at 506, and reiterated it several times. See, *e.g.*, *id.*, at 507 ("narro[w]" and "single inquiry" is whether "negligence of the employer played any part at all" in bringing about the injury); *id.*, at 508

(FELA case "rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury").[2]

*Rogers* is most sensibly read as a comprehensive statement of the FELA causation standard. Notably, the Missouri Supreme Court in *Rogers* did not doubt that a FELA injury might have multiple causes, including railroad negligence and employee negligence. See 284 S. W. 2d, at 472 (reciting FELA's "in whole or in part" language). But the railroad's part, according to the state court, was too indirect, not sufficiently "natural and probable," to establish the requisite causation. *Ibid.* That is the very reasoning the Court rejected in *Rogers*. It is also the reasoning CSX asks us to resurrect.

Our understanding is informed by the statutory history and precedent on which *Rogers* drew. Before FELA was enacted, the "harsh and technical" rules of state common law had "made recovery difficult or even impossible" for injured railroad workers. *Trainmen* v. *Virginia ex rel. Virginia State Bar*, 377 U. S. 1, 3 (1964). "[D]issatisfied with the [railroad's] common-law duty," Congress sought to "supplan[t] that duty with [FELA's] far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence." *Rogers*, 352 U. S., at 507. Yet, *Rogers* observed, the Missouri court and other lower courts continued to ignore FELA's "significan[t]" departures from the "ordinary common-law

---

[2] In face of *Rogers*' repeated admonition that the "any part . . . in producing the injury" test was the *single* test for causation under FELA, the dissent speculates that *Rogers* was simply making a veiled reference to a particular form of modified comparative negligence, *i.e.*, allowing plaintiff to prevail on showing that her negligence was "slight" while the railroad's was "gross." *Post*, at 9–10. That is not what *Rogers* conveyed. To repeat, *Rogers* instructed that "the test of a jury case [under FELA] is simply whether . . . employer negligence played any part, even the slightest, in producing the injury." 352 U. S., at 506.

negligence" scheme, to reinsert common-law formulations of causation involving "probabilities," and consequently to "deprive litigants of their right to a jury determination." *Id.*, at 507, 509–510. Aiming to end lower court disregard of congressional purpose, the *Rogers* Court repeatedly called the "any part" test the "*single*" inquiry determining causation in FELA cases. *Id.*, at 507, 508 (emphasis added). In short, CSX's argument that the *Rogers* standard concerns only division of responsibility among multiple actors, and not causation more generally, misses the thrust of our decision in that case.

Tellingly, in announcing the "any part . . . in producing the injury" test, *Rogers* cited *Coray* v. *Southern Pacific Co.*, 335 U. S. 520 (1949), a decision emphasizing that FELA had parted from traditional common-law formulations of causation. What qualified as a "proximate" or legally sufficient cause in FELA cases, *Coray* had explained, was determined by the statutory phrase "resulting in whole or in part," which Congress "selected . . . to fix liability" in language that was "simple and direct." *Id.*, at 524. That straightforward phrase, *Coray* observed, was incompatible with "dialectical subtleties" that common-law courts employed to determine whether a particular cause was sufficiently "substantial" to constitute a proximate cause. *Id.*, at 523–524.[3]

Our subsequent decisions have confirmed that *Rogers*

———————

[3] The dissent, while recognizing "the variety of formulations" courts have employed to define "proximate cause," *post*, at 2, does not say which of the many formulations it would declare applicable in FELA cases. We regard the phrase "negligence played a part—no matter how small," see *Rogers*, 352 U. S., at 508, as synonymous with "negligence played any part, even the slightest," see *id.*, at 506, and the phrase "in producing the injury" as synonymous with the phrase "in bringing about the injury." We therefore approve both the Seventh Circuit's instruction and the "any part, even the slightest, in producing the injury" formulation. The host of definitions of proximate cause, in contrast, are hardly synonymous.

announced a general standard for causation in FELA cases, not one addressed exclusively to injuries involving multiple potentially cognizable causes. The very day *Rogers* was announced, we applied its "any part" instruction in a case in which the sole causation issue was the directness or foreseeability of the connection between the carrier's negligence and the plaintiff's injury. See *Ferguson* v. *Moore-McCormack Lines, Inc.*, 352 U. S. 521, 523–524 (1957) (plurality opinion).

A few years later, in *Gallick* v. *Baltimore & Ohio R. Co.*, 372 U. S. 108 (1963), we held jury findings for the plaintiff proper in a case presenting the following facts: For years, the railroad had allowed a fetid pool, containing "dead and decayed rats and pigeons," to accumulate near its right-of-way; while standing near the pool, the plaintiff-employee suffered an insect bite that became infected and required amputation of his legs. *Id.*, at 109. The appellate court had concluded there was insufficient evidence of causation to warrant submission of the case to the jury. *Id.*, at 112. We reversed, reciting the causation standard *Rogers* announced. *Id.*, at 116–117, 120–121. See also *Crane* v. *Cedar Rapids & Iowa City R. Co.*, 395 U. S. 164, 166–167 (1969) (contrasting suit by railroad employee, who "is not required to prove common-law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation," with suit by nonemployee, where "definition of causation . . . [is] left to state law"); *Gottshall*, 512 U. S., at 543 ("relaxed standard of causation applies under FELA").[4]

--------

[4] CSX and the dissent observe, correctly, that some of our pre-*Rogers* decisions invoked common-law formulations of proximate cause. See, *e.g.*, *Brady* v. *Southern R. Co.*, 320 U. S. 476, 483 (1943) (injury must be "the natural and probable consequence of the negligence" (internal quotation marks omitted)). Indeed, the "natural or probable" charge that CSX requested was drawn from *Brady*, which in turn relied on a pre-FELA case, *Milwaukee & St. Paul R. Co.* v. *Kellogg*, 94 U. S. 469,

In reliance on *Rogers*, every Court of Appeals that re-
views judgments in FELA cases has approved jury in-
structions on causation identical or substantively equiva-
lent to the Seventh Circuit's instruction.[5]  Each appellate
court has rejected common-law formulations of proximate
cause of the kind CSX requested in this case.  See *supra*,
at 2–3.  The current model federal instruction, recognizing
that the "FELA causation standard is distinct from the
usual proximate cause standard," reads:

> "The fourth element [of a FELA action] is whether an
> injury to the plaintiff resulted in whole or part from
> the negligence of the railroad or its employees or
> agents.  In other words, did such negligence play any

———————

475 (1877).  But other pre-*Rogers* FELA decisions invoked no common-
law formulations.  See, *e.g.*, *Union Pacific R. Co.* v. *Huxoll*, 245 U. S.
535, 537 (1918) (approving instruction asking whether negligence "con-
tribute[d] 'in whole or in part' to cause the death"); *Coray* v. *South-
ern Pacific Co.*, 335 U. S. 520, 524 (1949) (rejecting use of common-law
"dialectical subtleties" concerning the term "proximate cause," and ap-
proving use of "simple and direct" statutory language).  We rely on
*Rogers* not because "time begins in 1957," *post*, at 7, but because *Rogers*
stated a clear instruction, comprehensible by juries: Did the railroad's
"negligence pla[y] any part, even the slightest, in producing [the plain-
tiff's] injury"?  352 U. S., at 506.  In so instructing, *Rogers* replaced the
array of formulations then prevalent.  We have repeated the *Rogers*
instruction in subsequent opinions, and lower courts have employed it
for over 50 years.  To unsettle the law as the dissent urges would show
scant respect for the principle of *stare decisis*.

⁵See *Moody* v. *Maine Central R. Co.*, 823 F. 2d 693, 695–696 (CA1
1987); *Ulfik* v. *Metro-North Commuter R.*, 77 F. 3d 54, 58 (CA2 1996);
*Hines* v. *Consolidated R. Corp.*, 926 F. 2d 262, 267 (CA3 1991); *Her-
nandez* v. *Trawler Miss Vertie Mae, Inc.*, 187 F. 3d 432, 436 (CA4 1999);
*Nivens* v. *St. Louis Southwestern R. Co.*, 425 F. 2d 114, 118 (CA5 1970);
*Tyree* v. *New York Central R. Co.*, 382 F. 2d 524, 527 (CA6 1967);
*Nordgren* v. *Burlington No. R. Co.*, 101 F. 3d 1246, 1249 (CA8 1996);
*Claar* v. *Burlington No. R. Co.*, 29 F. 3d 499, 503 (CA9 1994); *Summers*
v. *Missouri Pacific R. System*, 132 F. 3d 599, 606–607 (CA10 1997); *Sea-
Land Serv., Inc.,* v. *Sellan*, 231 F. 3d 848, 851 (CA11 2000); *Little* v.
*National R. Passenger Corp.*, 865 F. 2d 1329 (CADC 1988) (table).

part, even the slightest, in bringing about an injury to the plaintiff?"  5 L. Sand et al., Modern Federal Jury Instructions–Civil ¶89.02, pp. 89–38, 89–40, and comment (2010) (hereinafter Sand).

Since shortly after *Rogers* was decided, charges of this order have been accepted as the federal model.  See W. Mathes & E. Devitt, Federal Jury Practice and Instructions §84.12, p. 517 (1965) (under FELA, injury "is proximately caused by" the defendant's negligence if the negligence "played any part, no matter how small, in bringing about or actually causing the injury").[6]  The overwhelming majority of state courts[7] and scholars[8] similarly comprehend FELA's causation standard.

In sum, the understanding of *Rogers* we here affirm "has been accepted as settled law for several decades."  *IBP, Inc.* v. *Alvarez,* 546 U. S. 21, 32 (2005).  "Congress has had [more than 50] years in which it could have corrected our decision in [*Rogers*] if it disagreed with it, and has not chosen to do so."  *Hilton* v. *South Carolina Public Railways Comm'n,* 502 U. S. 197, 202 (1991).  Countless judges have instructed countless juries in language drawn from *Rogers.*  To discard or restrict the *Rogers* instruction now would ill serve the goals of "stability" and "predictability"

––––––––––

[6] All five Circuits that have published pattern FELA causation instructions use the language of the statute or of *Rogers* rather than traditional common-law formulations.  See Brief for Academy of Rail Labor Attorneys as *Amicus Curiae* 19–20.

[7] See *id.,* at 21–22, 25–27 (collecting cases and pattern instructions). The parties dispute the exact figures, but all agree there are no more than a handful of exceptions.  The Seventh Circuit found "[a]t most" three.  598 F. 3d 388, 404, n. 7 (2010).

[8] See, *e.g.,* DeParcq, The Supreme Court and the Federal Employers' Liability Act, 1956–57 Term, 36 Texas L. Rev. 145, 154–155 (1957); 2 J. Lee & B. Lindahl, Modern Tort Law: Liability and Litigation §24:2, pp. 24–2 to 24–5 (2d ed. 2002); A. Larson & L. Larson, 9 Larson's Workers' Compensation Law §147.07[7], pp. 147–19 to 147–20 (2010); Prosser and Keeton §80, p. 579.

that the doctrine of statutory *stare decisis* aims to ensure. *Ibid.*

## III

CSX nonetheless insists that proximate causation, as captured in the charge and definitions CSX requested, is a concept fundamental to actions sounding in negligence. The *Rogers* "any part" instruction opens the door to unlimited liability, CSX worries, inviting juries to impose liability on the basis of "but for" causation. The dissent shares these fears. *Post*, at 5–6, 15–16. But a half century's experience with *Rogers* gives us little cause for concern: CSX's briefs did not identify even *one* trial in which the instruction generated an absurd or untoward award.[9] Nor has the dissent managed to uncover such a case. *Post*, at 13–14 (citing no actual case but conjuring up images of falling pianos and spilled coffee).

While some courts have said that *Rogers* eliminated the *concept* of proximate cause in FELA cases,[10] we think it "more accurate . . . to recognize that *Rogers* describes the test for proximate causation applicable in FELA suits." *Sorrell*, 549 U. S., at 178 (GINSBURG, J., concurring in judgment). That understanding was expressed by the

—————

[9] Pressed on this point at oral argument, CSX directed us to two cases cited by its *amicus*. In *Richards* v. *Consolidated Rail Corp.*, 330 F. 3d 428, 431, 437 (CA6 2003), a defective brake malfunctioned en route, and the employee was injured while inspecting underneath the train to locate the problem; the Sixth Circuit sent the case to a jury. In *Norfolk Southern R. Co.* v. *Schumpert*, 270 Ga. App. 782, 783–786, 608 S. E. 2d 236, 238–239 (2004), the employee was injured while replacing a coupling device that fell to the ground because of a negligently absent pin; the court upheld a jury award. In our view, the causal link in these cases is hardly farfetched; in fact, in both, the lower courts observed that the evidence did not show mere "but for" causation. See *Richards*, 330 F. 3d, at 437, and n. 5; *Schumpert*, 270 Ga. App., at 784, 608 S. E. 2d, at 239.

[10] See, *e.g.*, *Summers*, 132 F. 3d, at 606; *Oglesby* v. *Southern Pacific Transp. Co.*, 6 F. 3d 603, 609 (CA9 1993).

drafters of the 1965 federal model instructions, see *supra*, at 11–12: Under FELA, injury "is proximately caused" by the railroad's negligence if that negligence "played any part . . . in . . . causing the injury." Avoiding "dialectical subtleties" that confound attempts to convey intelligibly to juries just what "proximate cause" means, see *Coray*, 335 U. S., at 524, the *Rogers* instruction uses the everyday words contained in the statute itself. Jurors can comprehend those words and apply them in light of their experience and common sense. Unless and until Congress orders otherwise, we see no good reason to tamper with an instruction tied to FELA's text, long employed by lower courts, and hardly shown to be unfair or unworkable.

A

As we have noted, see *supra*, at 5–6, the phrase "proximate cause" is shorthand for the policy-based judgment that not all factual causes contributing to an injury should be legally cognizable causes. Prosser and Keeton explain: "In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond." §41, p. 264. To prevent "infinite liability," *ibid.*, courts and legislatures appropriately place limits on the chain of causation that may support recovery on any particular claim.

The term "proximate cause" itself is hardly essential to the imposition of such limits. It is a term notoriously confusing. See, *e.g.*, Prosser and Keeton §42, p. 273 ("The word 'proximate' is a legacy of Lord Chancellor Bacon, who in his time committed other sins. . . . It is an unfortunate word, which places an entirely wrong emphasis upon the factor of physical or mechanical closeness. For this reason 'legal cause' or perhaps even 'responsible cause' would be a more appropriate term." (footnotes omitted)).

And the lack of consensus on any one definition of "proximate cause" is manifest. *Id.*, §41, p. 263. Common-

law formulations include, *inter alia*, the "immediate" or "nearest" antecedent test; the "efficient, producing cause" test; the "substantial factor" test; and the "probable," or "natural and probable," or "foreseeable" consequence test. Smith, Legal Cause in Actions of Tort, 25 Harv. L. Rev. 103, 106–121 (1911); Smith, Legal Cause in Actions of Tort (Concluded), 25 Harv. L. Rev. 303, 311 (1912).

Notably, CSX itself did not settle on a uniform definition of the term "proximate cause" in this litigation, nor does the dissent. In the District Court, CSX requested a jury instruction defining "proximate cause" to mean "any cause which, in natural or probable sequence, produced the injury complained of." App. 32a. On appeal, "CSX maintain[ed] that the correct definition . . . is a 'direct relation between the injury asserted and the injurious conduct alleged.'" 598 F. 3d, at 393, n. 3. Before this Court, CSX called for "a demonstration that the plaintiff's injury resulted from the wrongful conduct in a way that was natural, probable, and foreseeable." Tr. of Oral Arg. 9–10.

Lay triers, studies show, are scarcely aided by charges so phrased. See Steele & Thornburg, Jury Instructions: A Persistent Failure to Communicate, 67 N. C. L. Rev. 77, 88–92, 110 (1988) (85% of actual and potential jurors were unable to understand a pattern proximate cause instruction similar to the one requested by CSX); Charrow & Charrow, Making Legal Language Understandable: A Psycholinguistic Study of Jury Instructions, 79 Colum. L. Rev. 1306, 1353 (1979) (nearly one quarter of subjects misunderstood proximate cause to mean "approximate cause" or "estimated cause"). In light of the potential of "proximate cause" instructions to leave jurors at sea, it is not surprising that the drafters of the Restatement (Third) of Torts avoided the term altogether. See 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm §29 (2005) (confining liability to "harms that result from the risks that made the actor's conduct tortious"); *id.,*

Comment *b*.

Congress, it is true, has written the words "proximate cause" into a number of statutes.[11]  But when the legislative text uses less legalistic language, *e.g.*, "caused by," "occasioned by," "in consequence of," or, as in FELA, "resulting in whole or in part from," and the legislative purpose is to loosen constraints on recovery, there is little reason for courts to hark back to stock, judge-made proximate-cause formulations.  See Smith, Legal Cause in Actions of Tort (Continued), 25 Harv. L. Rev. 223, 235 (1912).

## B

FELA's language is straightforward: railroads are made answerable in damages for an employee's "injury or death resulting in whole or in part from [carrier] negligence."  45 U. S. C. §51.  The argument for importing into FELA's text "previous judicial definitions or *dicta*" originating in non-statutory common-law actions, see Smith, Legal Cause in Actions of Tort (Continued), *supra*, at 235, misapprehends how foreseeability figures in FELA cases.

"[R]easonable foreseeability of harm," we clarified in *Gallick*, is indeed "an essential ingredient of [FELA] *negligence*."  372 U. S., at 117 (emphasis added).  The jury, therefore, must be asked, initially: Did the carrier "fai[l] to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances[?]"  *Id.*, at 118.  In that regard, the jury may be told that "[the railroad's] duties are measured by

---

[11] See, *e.g.*, Act of Sept. 7, 1916, ch. 458, §1, 39 Stat. 742–743 (United States not liable to injured employee whose "intoxication . . . is the proximate cause of the injury"); Act of Oct. 6, 1917, ch. 105, §306, 40 Stat. 407 (United States liable to member of Armed Forces for post-discharge disability that "proximately result[ed] from [a pre-discharge] injury"); Act of June 5, 1924, ch. 261, §2, 43 Stat. 389 (United States liable for "any disease proximately caused" by federal employment).

what is reasonably foreseeable under like circumstances." *Ibid.* (internal quotation marks omitted). Thus, "[i]f a person has no reasonable ground to anticipate that a particular condition . . . would or might result in a mishap and injury, then the party is not required to do anything to correct [the] condition." *Id.*, at 118, n. 7 (internal quotation marks omitted).[12]  If negligence is proved, however, and is shown to have "*played any part, even the slightest, in producing the injury*," *Rogers*, 352 U. S., at 506 (emphasis added),[13] then the carrier is answerable in damages even if "the extent of the [injury] or the manner in which it occurred" was not "[p]robable" or "foreseeable." *Gallick*, 372 U. S., at 120–121, and n. 8 (internal quotation marks omitted); see 4 F. Harper, F. James, & O. Gray, Law of Torts §20.5(6), p. 203 (3d ed. 2007); 5 Sand 89–21.

Properly instructed on negligence and causation, and told, as is standard practice in FELA cases, to use their "common sense" in reviewing the evidence, see Tr. 205 (Aug. 19, 2008), juries would have no warrant to award damages in far out "but for" scenarios. Indeed, judges would have no warrant to submit such cases to the jury. See *Nicholson* v. *Erie R. Co.*, 253 F. 2d 939, 940–941 (CA2 1958) (alleged negligence was failure to provide lavatory for female employee; employee was injured by a suitcase while looking for a lavatory in a passenger car; applying *Rogers*, appellate court affirmed lower court's dismissal for lack of causation); *Moody* v. *Boston and Maine Corp.*, 921 F. 2d 1, 2–5 (CA1 1990) (employee suffered stress-related

---

[12]A railroad's violation of a safety statute, however, is negligence *per se*. See *Kernan* v. *American Dredging Co.*, 355 U. S. 426, 438 (1958).

[13]The dissent protests that we would require only a showing that "defendant was negligent in the first place." *Post*, at 13. But under *Rogers* and the pattern instructions based on *Rogers*, the jury must find that defendant's negligence in fact "played a part—no matter how small—in bringing about the injury." See *supra*, at 2–3, 11–12 (Seventh Circuit pattern instruction and model federal instructions).

heart attack after railroad forced him to work more than 12 hours with inadequate breaks; applying *Rogers*, appellate court affirmed grant of summary judgment for lack of causation). See also *supra*, at 13 (*Rogers* has generated no extravagant jury awards or appellate court decisions).

In addition to the constraints of common sense, FELA's limitations on who may sue, and for what, reduce the risk of exorbitant liability. As earlier noted, see *supra*, at 4, the statute confines the universe of compensable injuries to those sustained by employees, during employment. §51. Hence there are no unforeseeable plaintiffs in FELA cases. And the statute weeds out the injuries most likely to bear only a tenuous relationship to railroad negligence, namely, those occurring *outside* the workplace.[14]

There is a real risk, on the other hand, that the "in natural or probable sequence" charge sought by CSX would mislead. If taken to mean the plaintiff's injury must *probably* ("more likely than not") follow from the railroad's negligent conduct, then the force of FELA's "resulting in whole or in part" language would be blunted. Railroad negligence would "probably" cause a worker's injury only if that negligence was a dominant contributor to the injury, not merely a contributor in any part.

* * *

For the reasons stated, it is not error in a FELA case to refuse a charge embracing stock proximate cause terminology. Juries in such cases are properly instructed that a

─────────

[14] CSX observes, as does the dissent*, post*, at 4, that we have applied traditional notions of proximate causation under the RICO, antitrust, and securities fraud statutes. But those statutes cover broader classes of potential injuries and complainants. And none assign liability in language akin to FELA's "resulting *in whole or in part*" standard. §51 (emphasis added). See *Holmes* v. *Securities Investor Protection Corporation*, 503 U. S. 258, 265–268 (1992); *Associated Gen. Contractors of Cal., Inc.* v. *Carpenters*, 459 U. S. 519, 529–535 (1983); *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U. S. 336, 342–346 (2005).

defendant railroad "caused or contributed to" a railroad worker's injury "if [the railroad's] negligence played a part—no matter how small—in bringing about the injury." That, indeed, is the test Congress prescribed for proximate causation in FELA cases. See *supra*, at 9, 13. As the courts below so held, the judgment of the U. S. Court of Appeals for the Seventh Circuit is

*Affirmed.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 10–235

_____

## CSX TRANSPORTATION, INC., PETITIONER *v.* ROBERT MCBRIDE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[June 23, 2011]

CHIEF JUSTICE ROBERTS, with whom JUSTICE SCALIA, JUSTICE KENNEDY, and JUSTICE ALITO join, dissenting.

"It is a well established principle of [the common] law, that in all cases of loss we are to attribute it to the proximate cause, and not to any remote cause: causa proxima non remota spectatur." *Waters* v. *Merchants' Louisville Ins. Co.*, 11 Pet. 213, 223 (1837) (Story, J.). The Court today holds that this principle does not apply to actions under the Federal Employers' Liability Act (FELA), and that those suing under that statute may recover for injuries that were not proximately caused by the negligence of their employers. This even though we have held that FELA generally follows the common law, unless the Act expressly provides otherwise; even though FELA expressly abrogated common law rules in four other respects, but said nothing about proximate cause; and even though our own cases, for 50 years after the passage of FELA, repeatedly recognized that proximate cause was required for recovery under that statute.

The Court is wrong to dispense with that familiar element of an action seeking recovery for negligence, an element "generally thought to be a necessary limitation on liability," *Exxon Co., U. S. A.* v. *Sofec, Inc.*, 517 U. S. 830, 838 (1996). The test the Court would substitute—whether negligence played any part, even the slightest, in produc-

ing the injury—is no limit at all. It is simply "but for" causation. Nothing in FELA itself, or our decision in *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500 (1957), supports such a boundless theory of liability.

I respectfully dissent.

# I

"Unlike a typical workers' compensation scheme, which provides relief without regard to fault, . . . FELA provides a statutory cause of action sounding in negligence." *Norfolk Southern R. Co.* v. *Sorrell*, 549 U. S. 158, 165 (2007). When Congress creates such a federal tort, "we start from the premise" that Congress "adopts the background of general tort law." *Staub* v. *Proctor Hospital*, 562 U. S. ___, ___ (2011) (slip op., at 5). With respect to FELA in particular, we have explained that "[a]bsent express language to the contrary, the elements of a FELA claim are determined by reference to the common law." *Sorrell, supra,* at 165–166; see *Urie* v. *Thompson*, 337 U. S. 163, 182 (1949).

Recovery for negligence has always required a showing of proximate cause. "'In a philosophical sense, the consequences of an act go forward to eternity.'" *Holmes* v. *Securities Investor Protection Corporation*, 503 U. S. 258, 266, n. 10 (1992) (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts §41, p. 264 (5th ed. 1984)). Law, however, is not philosophy, and the concept of proximate cause developed at common law in response to the perceived need to distinguish "but for" cause from those more direct causes of injury that can form the basis for liability at law.

The plurality breaks no new ground in criticizing the variety of formulations of the concept of proximate cause, *ante,* at 14–15; courts, commentators, and first-year law students have been doing that for generations. See *Exxon, supra,* at 838. But it is often easier to disparage the product of centuries of common law than to devise a plausible

substitute—which may explain why Congress did not attempt to do so in FELA. Proximate cause is hardly the only enduring common law concept that is useful despite its imprecision, see *ante*, at 14. It is in good company with proof beyond a reasonable doubt, necessity, willfulness, and unconscionability—to name just a few.

Proximate cause refers to the basic requirement that before recovery is allowed in tort, there must be "some direct relation between the injury asserted and the injurious conduct alleged," *Holmes*, 503 U. S., at 268. It excludes from the scope of liability injuries that are "too remote," "purely contingent," or "indirect[]." *Id.,* at 268, 271, 274. Recognizing that liability must not attach to "every conceivable harm that can be traced to alleged wrongdoing," proximate cause requires a "causal connection between the wrong and the injury," *Associated Gen. Contractors of Cal., Inc.* v. *Carpenters*, 459 U. S. 519, 536, 533, n. 26 (1983), that is not so "tenuous . . . that what is claimed to be consequence is only fortuity," *Exxon*, *supra*, at 838 (internal quotation marks omitted). It limits liability at some point before the want of a nail leads to loss of the kingdom. When FELA was passed, as now, "[t]he question whether damage in a given case is proximate or remote [was] one of great importance. . . . [T]he determination of it determines legal right," 1 T. Street, Foundations of Legal Liability 110 (1906) (reprint 1980).

FELA expressly abrogated common law tort principles in four specific ways. See *Sorrell*, *supra,* at 166, 168; *Consolidated Rail Corporation* v. *Gottshall*, 512 U. S. 532, 542–543 (1994). As enacted in 1908, the Act abolished the common law contributory negligence rule, which barred plaintiffs whose negligence had contributed to their injuries from recovering for the negligence of another. See Act of Apr. 22, §3, 35 Stat. 66. FELA also abandoned the so-called fellow-servant rule, §1, prohibited an assumption of risk defense in certain cases, §4, and barred employees

from contractually releasing their employers from liability, §5.

But "[o]nly to the extent of these explicit statutory alterations is FELA an avowed departure from the rules of the common law." *Gottshall, supra,* at 544 (internal quotation marks omitted). FELA did not abolish the familiar requirement of proximate cause. Because "Congress expressly dispensed with [certain] common-law doctrines" in FELA but "did not deal at all with [other] equally well-established doctrine[s]," I do not believe that "Congress intended to abrogate [the other] doctrine[s] *sub silentio*." *Monessen Southwestern R. Co.* v. *Morgan,* 486 U. S. 330, 337–338 (1988).

We have applied the standard requirement of proximate cause to actions under federal statutes where the text did not expressly provide for it. See *Dura Pharmaceuticals, Inc.* v. *Broudo,* 544 U. S. 336, 342–346 (2005) (securities fraud); *Holmes, supra,* at 268–270 (Racketeer Influenced and Corrupt Organizations Act); *Associated Gen. Contractors of Cal., Inc., supra,* at 529–535 (Clayton Act); cf. *Metropolitan Edison Co.* v. *People Against Nuclear Energy,* 460 U. S. 766, 774 (1983) ("the terms 'environmental effect' and 'environmental impact' in [the National Environmental Policy Act of 1969 should] be read to include a requirement of a reasonably close causal relationship between a change in the physical environment and the effect at issue . . . . like the familiar doctrine of proximate cause from tort law").

The Court does not explicitly rest its argument on its own reading of FELA's text. The jury instruction on causation it approves, however, derives from Section 1 of FELA, 45 U. S. C. §51. See *ante,* at 1, 16–17. But nothing in Section 1 is similar to the "express language" Congress employed elsewhere in FELA when it wanted to abrogate a common law rule, *Sorrell, supra,* at 165–166. See, *e.g.,* §53 ("the fact that the employee may have been guilty of

contributory negligence shall not bar a recovery"); §54 ("employee shall not be held to have assumed the risks of his employment").

As the very first section of the statute, Section 1 simply outlines who could be sued by whom and for what types of injuries. It provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." §51. The Court's theory seems to be that the words "in whole or in part" signal a departure from the historic requirement of proximate cause. But those words served a very different purpose. They did indeed mark an important departure from a common law principle, but it was the principle of contributory negligence—not proximate cause.

As noted, FELA abolished the defense of contributory negligence; the "in whole or in part" language simply reflected the fact that the railroad would remain liable even if its negligence was not the sole cause of injury. See *Sorrell*, 549 U. S*.,* at 170. The Congress that was so clear when it was abolishing common law limits on recovery elsewhere in FELA did not abrogate the fundamental principle of proximate cause in the oblique manner the Court suggests. "[I]f Congress had intended such a sea change" in negligence principles "it would have said so clearly." *Board of Trustees of Leland Stanford Junior Univ.* v. *Roche Molecular Systems, Inc.*, 563 U. S. ___, ___ (2011) (slip op., at 14).

The language the Court adopts as an instruction on causation requires only that negligence have "'played any part, even the slightest, in producing the injury.'" *Ante*, at 17 (quoting *Rogers*, 352 U. S., at 506; emphasis deleted); see also *ante,* at 18–19 ("Juries in such cases are properly instructed that a defendant railroad 'caused or contributed

to' a railroad worker's injury 'if [the railroad's] negligence played a part—no matter how small—in bringing about the injury'"). If that is proved, "then the carrier is answerable in damages even if the extent of the [injury] or the manner in which it occurred was not '[p]robable' or 'foreseeable.'" *Ante*, at 17 (some internal quotation marks omitted). There is nothing in that language that requires anything other than "but for" cause. The terms "even the slightest" and "no matter how small" make clear to juries that even the faintest whisper of "but for" causation will do.

At oral argument, counsel for McBride explained that the correct standard for recovery under FELA is "but-for plus a relaxed form of legal cause." Tr. of Oral Arg. 44. There is no "plus" in the rule the Court announces today. In this very case defense counsel was free to argue "but for" cause pure and simple to the jury. In closing, counsel informed the jury: "What we also have to show is defendant's negligence caused or contributed to [McBride's] injury. It never would have happened *but for* [CSX] giving him that train." App. to Pet. for Cert. 67a (emphasis added).

At certain points in its opinion, the Court acknowledges that "[i]njuries have countless causes," not all of which "should give rise to legal liability." *Ante*, at 5. But the causation test the Court embraces contains no limit on causation at all.

## II

This Court, from the time of FELA's enactment, understood FELA to require plaintiffs to prove that an employer's negligence "is a proximate cause of the accident," *Davis* v. *Wolfe*, 263 U. S. 239, 243 (1923). See, *e.g., ibid.* ("The rule clearly deducible from [prior] cases is that . . . an employee cannot recover . . . if the [employer's] failure . . . is not a proximate cause of the accident . . . but merely

creates an incidental condition or situation in which the accident, otherwise caused, results in such injury"); *Carter* v. *Atlanta & St. Andrews Bay R. Co.*, 338 U. S. 430, 435 (1949) ("if the jury determines that the defendant's breach is a contributory proximate cause of injury, it may find for the plaintiff" (internal quotation marks omitted)); *O'Donnell* v. *Elgin, J. & E. R. Co.*, 338 U. S. 384, 394 (1949) ("plaintiff was entitled to a[n] . . . instruction . . . which rendered defendant liable for injuries proximately resulting therefrom").

A comprehensive treatise written shortly after Congress enacted FELA confirmed that "the plaintiff must . . . show that the alleged negligence was the proximate cause of the damage" in order to recover. 1 M. Roberts, Federal Liabilities of Carriers §538, p. 942 (1918). As Justice Souter has explained, for the half century after the enactment of FELA, the Court "consistently recognized and applied proximate cause as the proper standard in FELA suits." *Sorrell*, *supra*, at 174 (concurring opinion).

No matter. For the Court, time begins in 1957, with our opinion in *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500.

That opinion, however, "left this law where it was." *Sorrell*, *supra,* at 174 (Souter, J., concurring). A jury in that case awarded Rogers damages against his railroad employer, but the Supreme Court of Missouri reversed the jury verdict. As the Court explains today, we suggested in *Rogers* that there were "two potential readings" of the lower court's opinion and that both were wrong. *Ante*, at 7. In doing so, we clarified the consequences of FELA's elimination of the common law contributory negligence rule. We did not do what Congress chose not to do, and abrogate the rule of proximate cause.

First, we rejected the idea "that [Rogers's] conduct was the *sole cause* of his mishap." 352 U. S., at 504 (emphasis added); contra, *Rogers* v. *Thompson*, 284 S. W. 2d 467, 472 (Mo. 1955) (while "[Rogers] was confronted by an emer-

gency[,] . . . it was an emergency brought about by himself"). There were, we explained, "probative facts from which the jury could find that [the railroad] was or should have been aware of conditions which created a likelihood that [Rogers] . . . would suffer just such an injury as he did.*"* 352 U. S., at 503. We noted that "[c]ommon experience teaches both that a passing train will fan the flames of a fire, and that a person suddenly enveloped in flames and smoke will instinctively react by retreating from the danger." *Ibid.* In referring to this predictable sequence of events, we described—in familiar terms—sufficient evidence of proximate cause. We therefore held that the railroad's negligence could have been a cause of Rogers's injury regardless of whether "the *immediate* reason" why Rogers slipped was the railroad's negligence in permitting gravel to remain on the surface or some other cause. *Ibid.* (emphasis added).

*Rogers* thereby clarified that, under a statute in which employer and employee could both be proximate causes of an injury, a railroad's negligence need not be the sole or last cause in order to be proximate. That is an application of proximate cause, not a repudiation of it. See Street 111 ("a cause may be sufficiently near in law to the damage to be considered its effective legal cause without by any means being the nearest or most proximate to the causes which contribute of the injury"); 1 D. Dobbs, Law of Torts §180, p. 445 (2001).

We then considered a second interpretation. The Missouri Supreme Court's opinion could alternatively be read as having held that Rogers's "conduct was *at least as probable a cause* for his mishap as any negligence of the [railroad]," and that—in those circumstances—"there was no case for the jury." 352 U. S., at 505 (emphasis added). If this was the principle the court applied below, it was also wrong and for many of the same reasons.

Under a comparative negligence scheme in which multi-

ple causes may act concurrently, we clarified that a railroad's negligence need not be the "sole, efficient, producing cause of injury," *id.,* at 506. The question was simply whether "employer negligence played any part, even the slightest, in producing the injury." *Ibid.* "It does not matter," we continued, "that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, *including the employee's contributory negligence." Ibid.* (emphasis added).

The Court today takes the "any part, even the slightest" language out of context and views it as a rejection of proximate cause. But *Rogers* was talking about contributory negligence—it said so—and the language it chose confirms just that. "Slight" negligence was familiar usage in this context. The statute immediately preceding FELA, passed just two years earlier in 1906, moved part way from contributory to comparative negligence. It provided that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery where his contributory negligence was slight and that of the employer was gross in comparison." Act of June 11, 1906, §2, 34 Stat. 232. Other statutes similarly made this halfway stop on the road from contributory to pure comparative negligence, again using the term "slight." See Dobbs §201, at 503 ("One earlier [version of comparative fault] . . . allowed the negligent plaintiff to recover if the plaintiff's negligence was slight and the defendant's gross. . . . Modern comparative negligence law works differently, reducing the plaintiff's recovery in proportion to the plaintiff's fault"); V. Schwartz, Comparative Negligence §2.01[b][2], p. 33 (5th ed. 2010) (a "major form of modified comparative negligence is the 'slight-gross' system"); *id.* §3.04[b], at 75. In 1908, FELA completed the transition to pure comparative negligence with respect to rail workers. See Dobbs §201, at 503. Under FELA, it does not matter whose negligence was "slight" or "gross." The use of the term

"even the slightest" in *Rogers* makes perfect sense when the decision is understood to be about multiple causes— not about how direct any particular cause must be. See *Sorrell*, 549 U. S., at 175 (Souter, J., concurring) (pertinent language concerned "multiplicity of causations," not "the necessary directness of . . . causation").

The Court views *Rogers* as "describ[ing] the test for proximate causation" under FELA, *ante*, at 13 (internal quotation marks omitted), but *Rogers* itself says nothing of the sort. See 352 U. S., at 506 (describing its test as "the test *of a jury case*" (emphasis added)). *Rogers* did not set forth a novel standard for proximate cause—much less an instruction designed to guide jurors in determining causation. Indeed, the trial court in *Rogers* used the term "proximate cause" in its jury instruction and directed the jury to find that Rogers could not recover if his injuries "were not directly . . . caused by" the railroad's negligence. *Id.,* at 505, n. 9 (internal quotation marks omitted). Our opinion quoted that instruction, *ibid.*, but "took no issue with [it] in this respect," *Sorrell*, *supra*, at 176 (Souter, J., concurring).

A few of our cases have characterized *Rogers* as holding that "a relaxed standard of causation applies under FELA." *Gottshall*, 512 U. S., at 543; see *Crane* v. *Cedar Rapids & Iowa City R. Co.*, 395 U. S. 164, 166 (1969). Fair enough; but these passing summations of *Rogers* do not alter its holding. FELA did, of course, change common law rules relating to causation in one respect: Under FELA, a railroad's negligence did not have to be the exclusive cause of an injury. See *Gottshall*, *supra*, at 542–543 ("Congress did away with several common-law tort defenses . . . . Specifically, the statute . . . rejected the doctrine of contributory negligence in favor of that of comparative negligence"). And, unlike under FELA's predecessor, the proportionate degree of the employee's negligence would not necessarily bar his recovery. But we have never held—

until today—that FELA entirely eliminates proximate cause as a limit on liability.

## III

The Court is correct that the federal courts of appeals have read *Rogers* to support the adoption of instructions like the one given here. But we do not resolve questions such as the one before us by a show of hands. See *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources*, 532 U. S. 598, 605 (2001); *id.,* at 621 (SCALIA, J., concurring) ("The dissent's insistence that we defer to the 'clear majority' of Circuit opinion is particularly peculiar in the present case, since that majority has been nurtured and preserved *by our own misleading dicta*"); cf. *McNally* v. *United States*, 483 U. S. 350, 365 (1987) (Stevens, J., dissenting) (pointing out that "[e]very court to consider the matter" had disagreed with the majority's holding).

In addition, the Court discounts the views of those state courts of last resort that agree FELA did not relegate proximate cause to the dustbin. Those courts either reject the position the Court adopts today or suggest that FELA does not entirely eliminate proximate cause. See *Ballard* v. *Union Pacific R. Co.*, 279 Neb. 638, 644, 781 N. W. 2d 47, 53 (2010) ("an employee must prove the employer's negligence and that the alleged negligence is a proximate cause of the employee's injury"); *CSX Transp., Inc.* v. *Miller*, 46 So. 3d 434, 450 (Ala. 2010) ("the jury in this case was properly instructed by the trial court that [respondent] could not be compensated for any injury not proximately caused by [petitioner's] negligence"), cf. *id.,* at 461 (quoting *Rogers*); *Raab* v. *Utah R. Co.*, 2009 UT 61, ¶20, 221 P. 3d 219, 225 ("*Rogers* did not speak to the issue of proximate cause"); *Gardner* v. *CSX Transp., Inc.*, 201 W. Va. 490, 500, 498 S. E. 2d 473, 483 (1997) ("we hold that to prevail on a claim under [FELA] . . . a plaintiff

employee must establish that the defendant employer acted negligently and that such negligence contributed proximately, in whole or in part, to plaintiff's injury"); *Snipes* v. *Chicago, Central, & Pacific R. Co.*, 484 N. W. 2d 162, 164–165 (Iowa 1992) (stating that "[r]ecovery under the FELA requires an injured employee to prove that the defendant employer was negligent and that the negligence proximately caused, in whole or in part, the accident," while noting that *Rogers*'s "threshold for recovery" is "low"); *Marazzato* v. *Burlington No. R. Co.*, 249 Mont. 487, 491, 817 P. 2d 672, 675 (1991) ("plaintiff has the burden of proving that defendant's negligence was the proximate cause in whole or in part of the plaintiff's [death]"); *Reed* v. *Pennsylvania R. Co.*, 171 Ohio St. 433, 436, 171 N. E. 2d 718, 721–722 (1961) ("such violation could not legally amount to a proximate cause of the injury to plaintiff's leg"); see also *Hager* v. *Norfolk & W. R. Co.*, No. 87553, 2006 WL 3634373, *6 (Ohio App., Dec. 14, 2006) ("the standard for proximate cause is broader under FELA than the common law" (internal quotation marks omitted)).

If nothing more, the views of these courts show that the question whether—and to what extent—FELA dispenses with proximate cause is not as "settled" as the Court would have it, *ante*, at 12 (internal quotation marks omitted). Under these circumstances, it seems important to correct an interpretation of our own case law that has run, so to speak, off its own rails.*

————————

* The Court's contention that our position would unsettle the law contrary to principles of *stare decisis* exaggerates the state of the law. As the court below noted, "[s]ince *Rogers*, the Supreme Court has not explained in detail how broadly or narrowly *Rogers* should be read by the lower federal courts." 598 F. 3d 388, 397 (CA7 2010). See also *Norfolk Southern R. Co.* v. *Sorrell*, 549 U. S. 158, 173 (2007) (Souter, J., concurring) ("*Rogers* did not address, much less alter, existing law governing the degree of causation necessary for redressing negligence

Even the Court seems to appreciate that it is creating a troubling gap in the FELA negligence action and ought to do *something* to patch it over. The something it proposes is "[r]easonable foreseeability of harm," *ante*, at 16 (internal quotation marks omitted). Foreseeability as a test for proximate causation would be one thing; foreseeability has, after all, long been an aspect of proximate cause. But that is not the test the Court prescribes. It instead limits the foreseeability inquiry to whether the defendant was negligent in the first place.

The Court observes that juries may be instructed that a defendant's negligence depends on "what a reasonably prudent person would anticipate or foresee as creating a potential for harm." 5 L. Sand et al., Modern Federal Jury Instructions–Civil ¶89.10, p. 89–21 (2010); see *ante*, at 16–17. That's all fine and good when a defendant's negligence results directly in the plaintiff's injury (nevermind that no "reasonable foreseeability" instruction was given in this case). For instance, if I drop a piano from a window and it falls on a person, there is no question that I was negligent and could have foreseen that the piano would hit someone—as, in fact, it did. The problem for the Court's test arises when the negligence does not directly produce the injury to the plaintiff: I drop a piano; it cracks the sidewalk; during sidewalk repairs weeks later a man barreling down the sidewalk on a bicycle hits a cone that repairmen have placed around their worksite, and is injured. Was I negligent in dropping the piano because I could have foreseen "*a* mishap and injury," *ante*, at 17 (emphasis added; internal quotation marks omitted)? Yes. Did my negligence cause "[*the*] mishap and injury" that resulted? It depends on what is meant by cause. My negligence was a "but for" cause of the injury: If I had not dropped the piano, the bicyclist would not have crashed. But is it a

—————

as the cause of negligently inflicted harm").

legal cause? No.

In one respect the Court's test is needlessly rigid. If courts must instruct juries on foreseeability as an aspect of negligence, why not instruct them on foreseeability as an aspect of causation? And if the jury is simply supposed to intuit that there should also be limits on the legal chain of causation—and that "but for" cause is not enough—why hide the ball? Why not simply tell the jury? Finally, if the Court intends "foreseeability of harm" to be a kind of poorman's proximate cause, then where does the Court find that requirement in the test *Rogers*—or FELA—prescribes? Could it be derived from the common law?

Where does "foreseeability of harm" as the sole protection against limitless liability run out of steam? An answer would seem only fair to the common law.

A railroad negligently fails to maintain its boiler, which overheats. An employee becomes hot while repairing it and removes his jacket. When finished with the repairs, he grabs a thermos of coffee, which spills on his now-bare arm, burning it. Was the risk that someone would be harmed by the failure to maintain the boiler foreseeable? Was the risk that an employee would be burned while repairing the overheated boiler foreseeable? Can the railroad be liable under the Court's test for the coffee burn? According to the Court's opinion, it does not matter that the "manner in which [the injury] occurred was not . . . foreseeable," *ante*, at 17 (internal quotation marks omitted), so long as some negligence—any negligence at all—can be established.

The Court's opinion fails to settle on a single test for answering these questions: Is it that the railroad's negligence "pla[y] a part—no matter how small—in bringing about the [plaintiff's] injury," as the Court indicates on pages 5, 17 note 13, and 19, or that "negligence play any part, even the slightest, in producing the injury," as suggested at pages 8 note 2, 11 note 4, and 17? The Court

says there is no difference, see *ante*, at 9, n. 3, but I suspect lawyers litigating FELA cases will prefer one instruction over the other, depending on whether they represent the employer or the employee. In any event, if the Court's test—whichever version—provides answers to these hypotheticals, the Court keeps them to itself.

Proximate cause supplies the vocabulary for answering such questions. It is useful to ask whether the injury that resulted was within the scope of the risk created by the defendant's negligent act; whether the injury was a natural or probable consequence of the negligence; whether there was a superseding or intervening cause; whether the negligence was anything more than an antecedent event without which the harm would not have occurred.

The cases do not provide a mechanical or uniform test and have been criticized for that. But they do "furnish illustrations of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other." *Exxon*, 517 U. S., at 839 (internal quotation marks omitted).

The Court forswears all these inquiries and—with them—an accumulated common law history that might provide guidance for courts and juries faced with causation questions. See *ante*, at 1 (FELA "does not incorporate 'proximate cause' standards developed in nonstatutory common-law tort actions"); *ante*, at 18 ("it is not error in a FELA case to refuse a charge embracing stock proximate cause terminology"). It is not necessary to accept every verbal formulation of proximate cause ever articulated to recognize that these standards provide useful guidance— and that juries should receive some instruction—on the type of link required between a railroad's negligence and an employee's injury.

\*   \*   \*

Law has its limits. But no longer when it comes to the

causal connection between negligence and a resulting injury covered by FELA.  A new maxim has replaced the old: *Caelum terminus est*—the sky's the limit.

I respectfully dissent.