COURT OF APPEALS
DECISION
DATED AND FILED

February 15, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP562**

STATE OF WISCONSIN

Cir. Ct. No.  2021CV37

**IN COURT OF APPEALS
DISTRICT IV**

BRUCE BESIADA,

PLAINTIFF-APPELLANT,

V.

WISCONSIN CENTRAL, LTD.,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Portage County: MICHAEL D. ZELL, Judge. *Reversed.*

Before Graham, Nashold, and Taylor, JJ.

¶1     GRAHAM, J.  Bruce Besiada was injured on the job when he fell off a ladder that was affixed to the side of a railcar as he attempted to repair the ladder's top rung, or "handhold."  Besiada filed a lawsuit against his employer, Wisconsin Central, Ltd., under the Federal Employer's Liability Act, 45 U.S.C.

§§ 51 *et seq.* ("FELA"). In his lawsuit, Besiada alleged that his injury was caused at least in part by Wisconsin Central's negligence, and more specifically, by its failure to develop and train employees on a reasonably safe method for repairing handholds that are above shoulder height. On Wisconsin Central's motion for summary judgment, the circuit court determined that Besiada's claim failed as a matter of law because Besiada could not prove reasonable foreseeability of harm, as he was required to do to establish Wisconsin Central's liability under FELA.

¶2      Based on the summary judgment materials and the substantive legal standards for FELA claims that were reaffirmed in *CSX Transportation, Inc. v. McBride*, 564 U.S. 685 (2011), we conclude that Wisconsin Central is not entitled to summary judgment. More specifically, Wisconsin Central does not establish that no jury could reasonably find that its method for repairing handholds above shoulder height created a foreseeable risk of harm. Accordingly, we reverse the order that granted summary judgment in Wisconsin Central's favor on Besiada's FELA claim.[1]

## BACKGROUND

¶3      The following facts are derived from the parties' summary judgment materials and are undisputed unless otherwise noted.

---

[1] In addition to seeking summary judgment on the FELA claim, Wisconsin Central also sought summary judgment on a claim under the Federal Safety Appliance Act that Besiada did not expressly include in his complaint, but that Wisconsin Central perceived him to be making based on statements in one of his expert's reports. During the hearing, Besiada clarified that his complaint did not allege a cause of action under the Federal Safety Appliance Act, but the circuit court nevertheless granted judgment on any such claim that Besiada may have been making. Neither party raises this issue on appeal and we address it no further.

¶4      Wisconsin Central is engaged as a common carrier, and it owns and operates various railroad tracks and yards.  At all relevant times, Wisconsin Central employed Besiada as a "carman" at its yard in Stevens Point.

¶5      As part of his job, Besiada was required to visually inspect incoming trains for defects.  If Besiada discovered a defect on a railcar, he would generally attempt to repair it in the yard; if he was unable to repair it, or unable to repair it safely, he would "bad order" the railcar, meaning that he would designate it to be moved into the shop for repair.  The parties appear to agree that, at all pertinent times, employees had at least some discretion in determining whether to attempt a repair in the yard or to bad order the railcar.  However, during his deposition, Besiada testified that his managers discouraged him from bad ordering railcars, presumably because it caused disruption and delay.

¶6      On the date of his injury, Besiada and his partner were inspecting an incoming train, and Besiada noticed a railcar with a bent handhold.  Handholds are thin metal bars that are affixed to a railcar's exterior and form the rungs of a ladder, which can be used to climb up the side of the railcar.  Federal Railroad Administration standards require four handholds to be affixed to the side of each railcar, with a minimum two-inch clearance between the handholds and the railcar's side.  If employees conducting inbound inspections discovered any handholds that were bent inward beyond those minimum clearance requirements, they were instructed to straighten them.

¶7      Besiada and other employees frequently repaired bent handholds. Besiada was trained to perform this type of repair using a tool called a "blue bar," which he carried with him during inspections.  A blue bar is a ratcheted pry bar with specialized features, including hooks that lock onto the bent handhold and a

wheel that allows the employee to pivot and to exert leveraged force on the handhold to bend it back into place.

¶8      At the time of Besiada's injury, Wisconsin Central expected employees to attempt to straighten bent handholds in the yard, including those that were positioned above shoulder height and could not be reached from the ground.[2] According to Wisconsin Central's established method for repairing high handholds, employees were to climb up the side of the railcar using the lower handholds, reach overhead to hook the blue bar onto the bent handhold, and then use leveraged force to straighten it. Wisconsin Central's safety rules require employees to maintain "three points of contact"—that is, two feet and one hand, or two hands and one foot—when climbing onto a railcar.

¶9      In this case, the top handhold (referred to as the "#4 handhold") was "smashed tight to [the rail]car" and was too high for Besiada to reach from the ground. Besiada testified that he did not notice any other defect in the handhold, apart from the fact that it was bent. In accordance with his training, Besiada attempted to repair the handhold by climbing onto the railcar. With both feet positioned on the #1 handhold, Besiada grabbed the #3 handhold with his left hand. Then, with the blue bar in his right hand, he swung his right arm over his

---

[2] In support of his argument that summary judgment was erroneously granted in Wisconsin Central's favor, Besiada points to evidence that Wisconsin Central changed its method of repair following his injury, and now requires railcars with bent handholds above shoulder height to be bad ordered and sent to the shop for repair. As Wisconsin Central observes, evidence of subsequent remedial measures is generally inadmissible "to prove negligence or culpable conduct in connection with the event." WIS. STAT. § 904.07 (2021-22). We assume without deciding that the evidence Besiada points to is inadmissible under this evidentiary prohibition, and we do not consider it as part of this appeal.

All references to the Wisconsin Statutes are to the 2021-22 version.

head and hooked the blue bar onto the #4 handhold. During his deposition, Besiada recalled using the blue bar to pull out and down on the #4 handhold once, and then repositioning the blue bar and exerting force a second time. At that point, the handhold broke off the railcar at both ends, causing the handhold, the blue bar, and Besiada to fall from the railcar onto the adjacent tracks. Besiada sustained significant injuries from the fall.

¶10    As noted, Besiada filed a claim against Wisconsin Central under FELA, 45 U.S.C. §§ 51 *et seq.*, seeking damages for his injuries. FELA is a federal statute that "provide[s] a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees." *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561 (1987). It was enacted in 1908, "when the railroad business was exceptionally hazardous," *CSX Transp.*, 564 U.S. at 691, and its purpose was to "shift[] part of the 'human overhead of' doing business from employees to their employers," *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994) (citation and one set of internal quotation marks omitted). Despite its remedial purpose, FELA is neither a strict liability statute nor a workers' compensation statute—it requires a showing that the employer's "negligence" caused the employee's injury, as the term negligence is construed as a matter of federal law. *Id.* at 543-44.

¶11    In his complaint, Besiada alleged that his injuries were caused, in whole or in part, by Wisconsin Central's negligence. Specifically, he alleged that Wisconsin Central breached its duty to provide a reasonably safe workplace by failing to "develop a reasonably safe procedure to straighten bent handholds on railroad freight cars"; by failing to "train employees on a reasonably safe procedure to straighten bent handholds on railroad freight cars"; and by failing to "require that [rail]cars with 'high' handholds in need of repair be moved to a shop

to permit the use of a lift device, scaffolding, or some [other] measure to eliminate the need for employees to climb on the [rail]car to perform the repair." In answering the complaint, Wisconsin Central denied that it was negligent, and further denied that its negligence caused Besiada's injuries.[3]

¶12 Wisconsin Central moved for summary judgment. Along with the motion, it included affidavits, deposition transcripts, and the deposition and report of an expert Besiada retained who had examined a portion of the handhold that broke.

¶13 As grounds for the motion, Wisconsin Central argued that Besiada could not prove "foreseeability of harm," as he was required to do to establish that it was negligent. Wisconsin Central further argued that, to establish foreseeability of harm, Besiada had to prove that it had prior notice of the defective condition that caused his injury. According to Wisconsin Central, the defective condition that Besiada claimed caused his injury was the specific handhold that broke. As discussed more fully below, Wisconsin Central argued that the summary judgment materials established that it did not have actual or constructive notice that the handhold that broke was defective, or more generally, that it was possible that a handhold could break off a railcar.[4]

---

[3] Wisconsin Central also alleged several affirmative defenses that are not material to the issues in this appeal.

[4] To support these arguments, Wisconsin Central cited Besiada's expert's opinion that Besiada would not have been able to observe any defect in the handhold (apart from the fact that it was bent) prior to attempting the repair; Besiada's deposition testimony that he did not notice any such defect; the absence of any evidence that Wisconsin Central had received prior reports about a problem with the handhold that broke; and the deposition testimony of employees including Besiada who testified that, prior to Besiada's injury, they had not observed a handhold break off a railcar at both ends.

¶14    In his response brief, Besiada argued that Wisconsin Central was misconstruing his theory of negligence.  According to Besiada, his FELA claim was not based on an allegation that Wisconsin Central was negligent for failing to identify or fix a defect in the handhold that broke.  Instead, he argued, his FELA claim was based on Wisconsin Central's negligence for failing to adopt "reasonably safe work methods" for straightening handholds that could not be reached from the ground.[5]

¶15    Besiada    also    argued    that    Wisconsin    Central's    briefing mischaracterized the legal standard under FELA for proving foreseeability of harm.    According to Besiada, FELA claims are governed by a "relaxed" foreseeability standard.  Under that standard, Besiada argued, an employee need only prove that a reasonable person would, in light of the facts then known to the employer, foresee that a condition creates a general increased risk of harm.  Therefore, Besiada argued, it did not matter whether Wisconsin Central had notice of a defect in the specific handhold that broke prior to his injury, or even whether it was reasonably foreseeable that a handhold could break.  As discussed at greater length below, Besiada argued that a jury could reasonably find that there was a foreseeable risk that employees could lose their balance and fall when attempting to repair a handhold using Wisconsin Central's "accepted and expected method" of repair, for reasons including but not limited to the possibility that a handhold might break.

---

[5] Additionally, Besiada asked the circuit court to impose a remedy for spoliation of evidence.  Besiada argued that, to the extent that he had to prove that Wisconsin Central had notice that the handhold was defective, he could not do so because Wisconsin Central failed to preserve the evidence concerning the broken handhold.  The circuit court declined to determine that Wisconsin Central spoliated any evidence.  Besiada does not raise this issue on appeal and we address it no further.

¶16 In its reply brief, Wisconsin Central disputed Besiada's assertion that FELA's foreseeability standard is "relaxed." It also addressed, for the first time, Besiada's theory that its method of repair created a foreseeable risk of falling. As discussed more fully below, Wisconsin Central asserted that Besiada had not provided evidence to support his theory that its method of repair created a foreseeable risk of falling or other harm.

¶17 At the close of a hearing on the motion, the circuit court granted judgment in Wisconsin Central's favor. The court determined that the facts were generally undisputed and that, based on those facts, Besiada's injuries were not reasonably foreseeable. The court reasoned that Wisconsin Central's method of repair did not create a foreseeable risk of harm because the method had been used for years without prior reported incidents or complaints, and the court determined that it was safe. Therefore, the court concluded, Wisconsin Central was not negligent, and Besiada's FELA claim failed on that basis. Besiada appeals.[6]

## DISCUSSION

¶18 Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[6] The parties' briefs do not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule was amended in 2021, *see* S. CT. ORDER 20-07, 397 Wis. 2d xiii (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for e-filing. As our supreme court explained when it amended the rule, the requirement ensures that the page numbers in the brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07.

party is entitled to judgment as a matter of law." WIS. STAT. § 802.08(2); *see also* *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 410 N.W.2d 816 (1987). Summary judgment is appropriate only if "no properly instructed, reasonable jury could find" in favor of the nonmoving party "based on the facts presented." *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 52, ¶2, 241 Wis. 2d 804, 623 N.W.2d 751. On appeal, "[w]e review an order for summary judgment de novo, using the same methodology as the circuit court." *Yahnke v. Carson*, 2000 WI 74, ¶10, 236 Wis. 2d 257, 613 N.W.2d 102.

¶19 Here, the parties appear to agree that the material facts are largely undisputed. Wisconsin Central contends that, based on the undisputed facts, it is entitled to judgment as a matter of law because Besiada cannot prove that it was negligent. More specifically, Wisconsin Central argues that Besiada cannot prove that it breached its duty to use reasonable care in furnishing a safe workplace because he cannot prove that it acted unreasonably in the face of a foreseeable risk of harm. *See CSX Transp., Inc.*, 564 U.S. at 703 (describing the negligence standard for FELA claims, and specifying that "reasonable foreseeability of harm" is "an essential ingredient" of FELA's negligence standard (citation omitted)). On that issue, the parties dispute whether the foreseeability requirement is "relaxed" under FELA. They also dispute precisely what a plaintiff must adduce to satisfy the foreseeability requirement, and whether a jury could reasonably find that the requirement is satisfied based on the largely undisputed facts of this case.

¶20 In addressing these disputes, we first summarize the principles of law that govern FELA claims, focusing specifically on the role that foreseeability plays in such claims. We then examine Wisconsin Central's argument that a jury could not reasonably find that there was a foreseeable risk of harm.

## I.  FELA and Foreseeability

¶21    As mentioned, Congress enacted FELA to provide a compensation scheme for railroad workers who are injured on the job.  ***Norfolk S. Ry. Co. v. Sorrell***, 549 U.S. 158, 165 (2007).   However, instead of enacting "a typical workers' compensation scheme, which provides relief without regard to fault," Congress created a federal statutory negligence action.  ***Id.***  According to the U.S. Supreme Court, "FELA jurisprudence gleans guidance" from common law standards.  ***Consolidated Rail Corp.***, 512 U.S. at 541-42.  Yet, the negligence action created under FELA is significantly different from the ordinary common-law negligence action.  *See **id.*** at 542-44 (identifying the ways in which FELA departs from the common law).  Among other things, FELA "eliminate[d] a number of traditional defenses to tort liability" that had effectively precluded railroad employees from recovering in tort,[7] and its language has been interpreted as expressly rejecting other common law principles, which we discuss further below.  ***Atchison, Topeka & Santa Fe Ry. Co.***, 480 U.S. at 561; ***Consolidated Rail Corp.***, 512 U.S. at 542.

¶22    FELA provides, in pertinent part:  "Every common carrier by railroad … shall be liable in damages to any person suffering injury while he is employed by such carrier … for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."  45 U.S.C. § 51.  The same provision also provides that common carriers are liable

---

[7] "Specifically the statute abolished the fellow servant rule, rejected the doctrine of contributory negligence in favor of comparative negligence, and prohibited employers from exempting themselves from FELA through contract; [and then] a 1939 amendment abolished the assumption of risk defense."  ***Consolidated Rail Corp. v. Gottshall***, 512 U.S. 532, 542 (1994) (citing 45 U.S.C. §§ 51, 53-55).

for injuries that result "in whole or in part" "by reason of any defect or insufficiency, due to its negligence, in its … equipment." *Id.*

¶23 When pursuing a FELA claim, a plaintiff may file suit in state or federal court. *See* 28 U.S.C. § 1445(a). In actions that are filed in a state court, procedural issues are decided in accordance with state and local rules, but the substantive law is governed by federal standards. *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985). In interpreting and applying those substantive federal standards, we are bound by the decisions of the United States Supreme Court, as well as precedential decisions of Wisconsin courts. *Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 307, 340 N.W.2d 704 (1983). For our purposes, decisions by other federal district and appellate courts, including the Seventh Circuit Court of Appeals, are not binding, and their value is limited to their persuasiveness. *See Elections Bd. of Wis. v. Wisconsin Mfrs. & Com.*, 227 Wis. 2d 650, 670 n.19, 597 N.W.2d 721 (1999).

¶24 To prevail in a FELA claim, a plaintiff must be an employee who was injured within the scope of employment, and the employment must have been in furtherance of the railroad employer's interstate transportation business. 45 U.S.C. § 51; *see also CSX Transp.*, 564 U.S. at 691. The plaintiff must also prove that the railroad employer was negligent, and that its negligence caused the employee's injury. *CSX Transp.*, 564 U.S. at 691-92. The U.S. Supreme Court most recently elaborated on these elements in *CSX Transportation*, specifically describing how "foreseeability" factors into the negligence and causation elements of a FELA claim. *Id.* at 703.

¶25 Beginning with negligence, the U.S. Supreme Court explained that the element is comprised of common law concepts of duty, breach, and

foreseeability of harm. *Id.* (citing *Gallick v. Baltimore & Ohio Ry. Co.*, 372 U.S. 108, 117-18 & n.7 (1963)). Under FELA, railroad employers have a duty to "use reasonable care in furnishing [their] employees with a safe place to work." *Atchison, Topeka & Santa Fe Ry. Co.*, 480 U.S. at 558; *see also Bailey v. Central Vermont Ry., Inc.*, 319 U.S. 350, 352-53 (1943). A railroad employer breaches that duty and is negligent if it "fail[s] to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances." *CSX Transp., Inc.*, 564 U.S. at 703 (citing *Gallick*, 372 U.S. at 118). Conversely, if the railroad employer has "no reasonable ground to anticipate that a particular condition would or might result in a mishap and injury, then [it] is not required to do anything to correct the condition." *Id.* (citing *Gallick*, 372 U.S. at 118 n.7). "Reasonable foreseeability of harm" is therefore an "essential ingredient" in the negligence analysis under FELA. *Id.* (citing *Gallick*, 372 U.S. at 117).

¶26 In FELA's causation analysis, by contrast, foreseeability plays no role. The U.S. Supreme Court has interpreted FELA's statutory language ("resulting in whole or in part …") as setting forth a "relaxed standard of causation" that displaces common law formulations of cause in fact and proximate cause. *See Consolidated Rail Corp.*, 512 U.S. at 542-43 (citing *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500 (1957)); *CSX Transp., Inc.*, 564 U.S. at 692.[8] Therefore, while foreseeability may be an ingredient in some common law

---

[8] Other courts have also implied that there is a lowered evidentiary standard with respect to a plaintiff's burden to prove causation under FELA than in an ordinary negligence case. *See Williams v. National R.R. Passenger Corp.*, 161 F.3d 1059, 1061 (7th Cir. 1998) (FELA actions are commonly submitted to juries on "evidence scarcely more substantial than pigeon bone broth" (citation omitted)).

12

formulations of causation,[9] the Supreme Court has rejected the premise that it plays any role in FELA's causation standard. *Gallick*, 372 U.S. at 120 ("for a defendant to be liable for consequential damages [it] need not foresee the particular consequences of [its] negligent acts"); *CSX Transp., Inc.*, 564 U.S. at 704 (FELA's causation standard does not take into account whether "the extent of the injury or the manner in which it occurred was … probable or foreseeable" (citation and internal quotation marks omitted)). Thus, under FELA, the test for causation is simply whether "employer negligence played any part, even the slightest, in producing the injury." *CSX Transp., Inc.*, 564 U.S. at 692 (citation omitted).

¶27 For purposes of summary judgment in this case, it is undisputed that, if Wisconsin Central was negligent, its negligence "played a[] part" in causing Besiada's injury. *See id.* The only dispute is whether Wisconsin Central was, in fact, negligent. More specifically, the parties dispute whether a jury could find that there was a reasonably foreseeable risk of harm, such that Wisconsin Central may have breached its duty to use reasonable care in furnishing a safe workplace and was therefore negligent.

---

[9] More specifically, under the common law of some jurisdictions, causation is comprised of "cause in fact" and "proximate cause." *See* RESTATEMENT (SECOND) OF TORTS § 431 at 428 (1965) (1st reprint 1978). Proximate cause refers to a set of rules or policy considerations that limit a defendant's liability for harm, even if the defendant's negligence was a cause in fact of the harm. *CSX Transportation, Inc. v. McBride*, 564 U.S. 685, 692 (2011) (stating that proximate cause "is shorthand for [the concept that] injuries have countless causes, and not all should give rise to legal liability" (citations omitted)); *see also* *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 352, 162 N.E. 99 (1928) (Andrews, J., dissenting) ("[B]ecause of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point."). Common law formulations of proximate cause often incorporate concepts of foreseeability, limiting liability to those injuries that are a probable, natural, or foreseeable consequence of the defendant's negligence. *CSX Transp., Inc.*, 564 U.S. at 701.

¶28    To that end, a significant portion of the appellate briefing is devoted to arguments about whether, like FELA's causation standard, FELA's negligence standard is also "relaxed" as compared to common law standards.  It is true that some courts have used the adjective "relaxed" when describing FELA's standard, including the requirement of foreseeability of harm.  However, the U.S. Supreme Court has not used that adjective to describe FELA's negligence standard, and we do not find that adjective to be useful in describing the legal standard.  The legal standard is what the U.S. Supreme Court says it is, and we therefore focus our analysis on the standard itself, as it has been articulated by the U.S. Supreme Court in *CSX Transportation*, *Gallick*, and other cases.[10]

¶29    As articulated by the U.S. Supreme Court, "reasonable foreseeability of harm" is an essential ingredient in FELA's negligence standard, and it requires proof that a reasonably prudent person would, in light of the facts then known to the railroad employer, "anticipate that a particular condition would or might result in mishap and injury."  *CSX Transp., Inc.*, 564 U.S. at 703 (citation omitted).

---

[10]  We recognize that, in some cases decided prior to *CSX Transportation*, this court and other courts have suggested that plaintiffs have a lighter burden when proving negligence in FELA actions. *See, e.g.*, *Vonderhaar v. Soo Line R.R. Co.*, 2001 WI App 77, ¶¶5, 8, 242 Wis. 2d 746, 626 N.W.2d 314 (describing FELA's standard of liability as "low[er]" and stating that a FELA plaintiff can survive summary judgment "when there is even slight evidence of negligence" (citation omitted)).  Indeed, in an opinion that was issued several months after *CSX Transportation* was decided, this court repeated this same formulation, and further described FELA as setting forth a "relaxed liability standard, as applied to foreseeable harm." *Dalka v. Wisconsin Cent., Ltd.*, 2012 WI App 22, ¶¶16, 19, 339 Wis. 2d 361, 811 N.W.2d 834.

We question whether these statements are fully consistent with *CSX Transportation*, which describes FELA's causation standard as "relaxed," but does not use that adjective to describe FELA's negligence standard, instead describing it as a "fail[ure] to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances." *CSX Transp., Inc.*, 564 U.S. at 703 (citation omitted).  Ultimately, however, we need not decide whether the statements in the above-cited cases are consistent with the standard articulated in *CSX Transportation*, which is binding precedent that we are required to follow.

Notably, foreseeability does not require proof that the employer subjectively foresaw the potential for harm; instead, the question is whether a reasonably prudent person would foresee the potential for harm based on the facts known to the employer. *See Gallick*, 372 U.S. at 118 (describing foreseeability as an objective test). Nor does foreseeability of harm require proof of prior similar incidents or complaints. *See id.* at 121 (rejecting any requirement that there be evidence of similar incidents as "far too narrow a concept of foreseeable harm to negative negligence under [FELA]"). Finally, proof that the specific manner, method, or magnitude of an employee's injury was reasonably foreseeable, as is required in some common law formulations of proximate cause, is also not required to establish reasonable foreseeability of harm under FELA. *See CSX Transp., Inc.*, 564 U.S. at 703; *Gallick*, 372 U.S. at 118.

¶30 This leaves the question of who decides whether harm was reasonably foreseeable. Under U.S. Supreme Court precedent, disputes about whether a railroad was negligent, including disputes about whether harm was reasonably foreseeable, are generally matters to be resolved by the jury. *CSX Transp., Inc.*, 564 U.S. at 703-04 (describing reasonable foreseeability of harm as a question of fact for the jury); *Bailey*, 319 U.S. at 353-54. Such disputes should be resolved by a court on summary judgment only when no properly instructed jury could find that there was "reasonable ground to anticipate that a particular condition would or might result in mishap and injury." *See CSX Transp., Inc.*, 564 U.S. at 703.

¶31 This principle is best illustrated by the U.S. Supreme Court's discussion in *Bailey*. There, Bailey was killed on the job as he unloaded a hopper car full of cinders. *Bailey*, 319 U.S. at 351-52. Whether the railroad was negligent turned on "[t]he nature of the task which Bailey undertook, the hazards

15

which it entailed, the effort which it required, the kind of footing he had, the space in which he could stand, the absence of a guard rail," and other circumstances including the availability of a safer method for unloading hopper cars. *Id.* at 353. As the Court explained, "all these were facts and circumstances for the jury to weigh and appraise in determining whether" the railroad was negligent. *Id.* "The debatable quality of that issue," together with "the fact that fair-minded [people] might reach different conclusions, emphasize the appropriateness of leaving the question to the jury." *Id.* The *Bailey* Court described "[t]he right to trial by jury" as "part and parcel of the remedy afforded railroad workers under [FELA]," and explained that "[t]o deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them." *Id.* at 354.

## II.  Wisconsin Central's Arguments

¶32    According to Wisconsin Central, it is entitled to judgment as a matter of law because no jury could find that a reasonable person in Wisconsin Central's position could foresee the potential for harm.  Yet, as mentioned above, its arguments as to why have evolved over time.  We begin our analysis by focusing on the foreseeability argument that Wisconsin Central advanced in the brief that accompanied its motion for summary judgment.  We then separately address the foreseeability argument that Wisconsin Central raised for the first time in the reply brief it filed with the circuit court.

### A.  Arguments about the Handhold

¶33    During the circuit court proceedings, Wisconsin Central initially focused its foreseeability analysis on the handhold that broke off as Besiada attempted to straighten it.  To that end, Wisconsin Central cited a number of non-

16

binding federal circuit court decisions, several of which involved defective equipment. *See, e.g.*, ***Williams v. National R.R. Passenger Corp.***, 161 F.3d 1059 (7th Cir. 1998) (defective door); ***Montgomery v. CSX Transp., Inc.***, 230 F. Supp. 3d 447 (D. Md. 2017) (defective tool cart). In these cases, the courts required proof that the railroad employer had actual or constructive notice of an equipment defect to satisfy the foreseeability requirement. *See* ***Williams***, 161 F.3d at 1062-63; ***Montgomery***, 230 F. Supp. 3d at 455, 457. Wisconsin Central asserted that there was no evidence that it had actual or constructive notice of any defect in the handhold that Besiada was attempting to repair and therefore that it was not reasonably foreseeable that the handhold would "completely break away from the [rail]car." It further argued that it lacked notice that it was possible for handholds to break off railcars, as there was no evidence of prior similar incidents. Wisconsin Central renews these arguments on appeal.

¶34 It is not entirely clear what Wisconsin Central means to argue by focusing on the foreseeability of the handhold breaking. Besiada has not pled his claim as one based on defective equipment, and we agree with Besiada that this is the wrong lens through which to evaluate his claim. *See* 45 U.S.C. § 51 (addressing FELA claims for injuries that result "by reason of any defect or insufficiency, due to its negligence, in its [rail]cars, … or other equipment"). Instead, as noted, Besiada's complaint alleges that Wisconsin Central's established method for repairing handholds that are above shoulder height created a foreseeable risk of harm, and that Wisconsin Central was negligent for failing to develop and train its employees on a reasonably safe repair method. *See* 45 U.S.C. § 51 (separately addressing FELA claims for injuries "resulting in whole or in part from the negligence of any of the officers, agents, or employees"). Specifically, Besiada alleges that Wisconsin Central's method of repair created a foreseeable

17

risk that employees could lose their balance and fall for any number of reasons, including, but not limited to, a handhold breaking.

¶35     Although Wisconsin Central attempts to explain its focus on the handhold in its appellate briefing, we do not follow the logic of its explanation. Wisconsin Central asserts that, because "there is simply no evidence that the method of repair" was "unsafe," the analysis should instead turn on "whether [Wisconsin Central] had notice of the defective handhold." We disagree. As stated, Besiada's FELA claim is premised on Wisconsin Central's method of repair. Therefore, consistent with *CSX Transportation*, the pertinent foreseeability question is whether a reasonable person would, in light of the facts then known to Wisconsin Central, have reason to "anticipate that [its method of repair] would or might result in mishap and injury." *CSX Transp., Inc.*, 564 U.S. at 703. If no jury could find that Wisconsin Central's method of repair created a reasonably foreseeable risk of harm, then Besiada's FELA claim should be dismissed on that basis, rather than analyzed as a claim that Besiada did not plead in his complaint.[11]

¶36     By focusing on the handhold that broke, Wisconsin Central may mean to argue that Besiada cannot prove that its method of repair created a foreseeable risk of harm because he cannot prove that the specific chain of events that led to his injury was reasonably foreseeable. Indeed, in its circuit court briefing, Wisconsin Central asserted: "[Wisconsin Central] had absolutely no notice—actual or constructive—that the handhold would break in the manner it

---

[11] As discussed, Wisconsin Central did not address Besiada's claim about its method of repair until it filed its reply brief in the circuit court. We address Wisconsin Central's arguments on that topic in section II.B. of this opinion.

did." And on appeal, it contends that "there is absolutely no evidence [Wisconsin Central] should have known the handhold would fall off in the manner it did."

¶37    We reject as contrary to binding precedent any argument that Besiada must show that the specific chain of events that led to his injury was foreseeable. In *Gallick*, the U.S. Supreme Court rejected the premise that foreseeability requires proof that the railroad employer could have foreseen the specific "chain of events that would culminate in" an employee's injury. *See Gallick*, 372 U.S. at 119-20. Instead, under *Gallick* and *CSX Transportation*, the analysis turns on whether a reasonable person would foresee that a particular condition would or might result in mishap and injury generally, even if the specific chain of events leading to it, or its precise form, were not reasonably foreseeable. Here, so long as Besiada can persuade the jury that Wisconsin Central's method of repair created a foreseeable risk of losing one's balance and falling, he need not prove that it was foreseeable that he would lose his balance because the specific handhold that he was attempting to repair would break off the railcar.

¶38    Alternatively, Wisconsin Central may mean to argue that the only reason that an employee might lose their balance and fall while using its repair method is if the handhold broke off the railcar. Therefore, the argument goes, its method of repair did not create a foreseeable risk of losing one's balance and falling because, Wisconsin Central asserts, it was not reasonably foreseeable that a handhold would break off a railcar during repair. To the extent that Wisconsin Central is making this argument, we reject it as unpersuasive and unsupported by the summary judgment materials for at least two reasons.

¶39    First, we are not persuaded that the evidence would require a jury to find it unforeseeable that a handhold could break during an attempted repair

(whether in one location or two). To be sure, none of the witnesses who were deposed had previously seen a handhold break in two locations. However, several employees testified that they had broken handholds while attempting the repair, and Wisconsin Central points to no evidence that conclusively establishes that an employee could not lose their balance and fall if the handhold they were attempting to repair breaks in one as opposed to two locations. According to Besiada's expert, metal can become brittle through repeated bending and straightening, and according to all of the employees who were deposed, they often encountered handholds that were bent and in need of straightening. Based on this evidence, a jury could reasonably infer, among other things, that the process of repeatedly straightening bent handholds created a foreseeable risk that handholds would become brittle and prone to breaking during repair.

¶40 Second, and more broadly, we are not persuaded that the only foreseeable reason that an employee could lose their balance while using Wisconsin Central's method of repair is if the handhold the employee is attempting to repair breaks. As discussed above, Wisconsin Central's repair method required employees to balance on a ladder comprised of thin metal rungs spaced no more than three inches from the side of the railcar, and then use the blue bar to exert overhead force on the bent handholds. According to a manufacturer's warning that Besiada included with his summary judgment materials, users should maintain a firm footing while using the blue bar, and Besiada averred that the narrow rungs upon which his feet would rest did not provide firm footing. Under the circumstances, even apart from the possibility of a handhold breaking, one can imagine any number of ways in which employees could lose their balance while standing on a ladder and exerting overhead force with one hand.

## B. Arguments About the Repair Method

¶41 We now turn to Wisconsin Central's arguments that expressly address its method of repair, which as noted above, it raised for the first time in the reply brief that it filed with the circuit court. In that brief, Wisconsin Central argued that it is entitled to summary judgment because no jury could reasonably find that its method of repair created a foreseeable risk that employees could lose their balance and fall. To that end, Wisconsin Central pointed to the following evidence in the summary judgment record: testimony establishing that Besiada and other employees frequently repaired high handholds using its repair method and had done so for years; the lack of any evidence establishing prior similar incidents of employees falling or otherwise sustaining injury while utilizing its method of repair; and the lack of evidence establishing that Besiada or other employees had previously expressed any concerns about the safety of repairing high handholds using its repair method prior to Besiada's fall. Wisconsin Central also pointed to evidence concerning the features of the blue bar and Wisconsin Central's safety protocols, which required Besiada to maintain three points of contact with a railcar when climbing onto it. Wisconsin Central speculated that, if Besiada was following its protocol and using the blue bar properly, he would not have fallen. Wisconsin Central repeats these arguments in its appellate briefing.

¶42 We first observe that, because Wisconsin Central did not even attempt to address Besiada's allegations that its method of repair was unsafe until it filed its reply brief in the circuit court, Besiada was not given a fair opportunity to marshal evidence to squarely address the purportedly undisputed facts that are cited in Wisconsin Central's reply brief. We could decline to address Wisconsin Central's arguments about its method of repair on this basis alone. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct.

App. 1998) (it is fundamentally unfair for a litigant to withhold an argument from its main brief and argue it in its reply brief because such conduct prevents any response from the opposing party).

¶43    We nonetheless proceed to address Wisconsin Central's arguments. We conclude that, even if the facts Wisconsin Central cites are undisputed, they fail to establish that no jury could reasonably find that its method of repair created a foreseeable risk of falling.

¶44    We begin with Wisconsin Central's assertion that its repair method had been used for years without reports of similar injury or complaint. Based on the lack of prior injury, Wisconsin Central contends, no reasonable person in Wisconsin Central's position would have reason to anticipate that its method of repair would or might result in mishap or injury. A similar argument was addressed and squarely rejected in *Gallick*, 372 U.S. at 121-22. There, the Court specifically described this inference as "far too narrow a concept of foreseeable harm to negative negligence under [FELA]." *Id.* Although the absence of evidence of prior similar incidents or of prior complaints might bear on a jury's assessment of whether its method created a foreseeable risk of harm, these facts, even if undisputed, do not justify taking the foreseeability question away from the jury.

¶45    Wisconsin Central also points to its three-points-of-contact policy and the features of the blue bar, including the fact that blue bars have hooks on them that lock onto the handhold in need of repair. From these facts, it asserts that employees would be able to safely balance on the railcar while conducting a repair with one hand raised overhead, and therefore, its repair method created no foreseeable risk of falling. Although a jury could infer that Wisconsin Central's

three-points-of-contact policy together with the features of the blue bar ensured that employees would be safely balanced, thereby rendering a fall unforeseeable, nothing in the summary judgment materials mandates such an inference.

¶46 In sum, Wisconsin Central's arguments concerning its method of repair do not preclude a jury finding of foreseeability as a matter of law. At the summary judgment stage, all reasonable inferences should be construed in favor of the nonmoving party, and where "more than one reasonable inference can be drawn from the undisputed facts, summary judgment is not appropriate." *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶47, 305 Wis. 2d 538, 742 N.W.2d 294 (citation omitted). Indeed, as the U.S. Supreme Court said in *Bailey*, "[t]he right to trial by jury" is "part and parcel of the remedy afforded railroad workers under [FELA]," and "[t]he debatable quality of" a railroad employer's alleged negligence, and "the fact that fair-minded [people] might reach different conclusions, emphasize the appropriateness of leaving the question to the jury." *Bailey*, 319 U.S. at 354, 353.

## CONCLUSION

¶47 For the foregoing reasons, we conclude that Wisconsin Central is not entitled to summary judgment on Besiada's FELA claim, and we reverse the summary judgment order.

*By the Court.*—Order reversed.

Not recommended for publication in the official reports.